NATIONAL BANK OF PULASKI *v.* J. H. WINSTON *et al.*

1. CHANCERY PRACTICE. *Fraudulent device to obtain jurisdiction.* The defendant, a convicted felon, in the penitentiary, had previous to his conviction, pawned his watch and jewelry to a party in Louisville, Ky., and B., a resident of this State, paid the pawnee the amount due thereon, and brought them here; whereupon the plaintiff levied his attachment, subject to the amount of B.'s claim : *Held,* that the transfer of the property here was not such a fraudulent device to get the property within the jurisdiction of the court, as would avoid the attachment.

This case distinguished from *Timmons* v. *Garrison,* 4 Hum. 148.

2. PAWN. *Assignee.* A pawn is a mere collateral security for the payment of a debt, and a pawnee may assign his interest in the pledge, and the assignee will take it under all the responsibilities of the original pawnee; or he may transfer conditionally his interest by way of pawn to another, and his assignee will hold the pledge until the debt of the original owner is discharged.

Case cited : 11 Hum., 398-9.

No record.

DEADERICK, C. J., delivered the opinion of the court.

The bill in this case was filed in the Chancery Court of Pulaski, attaching a watch, chain, and jewelry in the hands of defendant Ballentine, as the property of Winston, or in which he had an interest.

Winston forged a check for $250, which he procured the complainant to cash by false and fraudulent representations, and was subsequently arrested in Kentucky, brought back to Tennessee, convicted of the forgery, and is now in the penitentiary. Upon his person after he was brought to Tennessee was found a card, showing that he had pawned the articles mentioned in Louisville for $118.

Ballentine procured a banker there to pay the $118, and the interest accrued thereon, and send him the watch, chain, and jewelry. Upon Ballentine's receiving the articles, the bank filed their attachment bill, alleging indebtedness for the $250 paid him upon the forged check, that Winston was a non-resident of the State, and about fraudulently to convey his property.

At the return term of the writ, the summons having been executed on Winston, who was in jail, and on Ballentine, complainant entered a motion for judgment *pro confesso* against defendant, and defendant Winston' entered a motion for leave to file pleas in abatement.

The first plea is one denying that he is a non-resident of the State. The second denies that he was about fraudulently to dispose of his property, and the third plea sets out the manner in which the watch, chain, and jewelry were brought into this State from Kentucky, and alleging that they were unlawfully and tortiously brought to Tennessee, that they might be attached in order to confer jurisdiction upon the courts of this State.

The court refused to allow the defendant Winston to file his first and second pleas probably upon the ground of their not being properly verified, or because he had not filed, or offered to file them before the complainant asked for a judgment *pro confesso*, which he was then entitled to under the rules of practice of the court, affidavits having been offered to excuse the delay. The last, or third plea, was allowed to be

filed as a plea in bar, and time was given him for three months to file his answer in support of said plea. Twelve months having expired, and no answer or plea filed by defendants, judgments *pro confesso* was entered and a decree .rendered for complainant directing the sale of the attached property, and after reimbursing Ballentine, appropriating the residue ·of proceeds to the debt of complainant and costs, and if any surplus to the solicitors of defendant Winston, he having transferred his interest therein after the levy of the attachment to them.

Usually, great liberality in the allowance to defendants, to make their defense, is practiced by the Chancery Courts, and in the exercise of their discretion of the Chancellor in receiving or rejecting pleas in abatement, which do not go to the merits of the controversy where they are offered after a complainant has made claim to his right to a judgment *pro confesso,* and where we can see that such plea would, if successful, tend rather to defeat than to attain the ends of justice, this court is very reluctant to interfere. We do not think this case presents any grounds upon which we ought to interfere with the action of the Chancellor.

It is very earnestly and plausibly argued that the record shows that the bringing of the jewelry, etc., into this State was a fraudulent device to confer jurisdiction upon the courts of this State, and that under the case of *Timmons* v. *Garrison,* 4 Hum., 148, the complainant should be repelled from court. If the question fairly arose upon the record, we are of opin-

ion that there is a marked distinction between that case and this.

In that case the creditor decoyed a slave out of the State of Georgia, from the home of his master, to give the court in Tennessee jurisdiction of the case, and this defense was relied upon in the answer, as well as by plea in abatement. The creditor by his wrongful act, sought to get jurisdiction in our courts to render a decree against his debtor, and also the property of his debtor, out of which to obtain satisfaction of his decree. But here the defendant Ballentine obtained the property in which Winston had an interest, by paying the pledgee the amount for which he held it in pledge; and if the pledgee might rightfully sell his claim or transfer his interest in the pledged or pawned property, Ballentine might lawfully buy it, even without the consent of Winston, and if he could rightfully buy it without or against Winston's assent, he might also take and hold possession of it. This he did, not for, or as an officer of the bank, of which he was president, but as an individual. 11 Hum., 398-9; Story on B., secs. 324-7.

It was not necessary to have the property here in order to give the court jurisdiction of the person of Winston, as he, although alleged to be a non-resident of the State, was, temporarily, within the State, and personal service of process was had upon him.

In the case cited in 11 Hum., 398-9, it is said that a pawn is a mere collateral security for the payment of a debt, and the pawnee may assign his interest in the pledge, and the assignee will take it

under all the responsibilities of the original pawnee. Or he may transfer conditionally, his interest by way of pawn to another, and his assignee will hold the pledge until the debt of the original owner is discharged, and it is further said that this species of lien can be created only by a delivery of the property given in pledge. It thus appears that Ballentine might lawfully acquire the possession of the pledged property by contract with the original pawnee, independently of any agreement or assent on the part of Winston, and holding it in possession, the bank might attach the interest of Winston therein, and subject it to sale for the satisfaction of its claim against him. Nor does the fact that the defendant Winston has been convicted and sentenced for forgery in obtaining the money sued for by complainant, preclude it from maintaining an action to recover back from him the amount with its interest so fraudulently and feloniously obtained.

Upon the whole, we are of opinion that the decree of the Chancellor is correct, and the same is affirmed, and the cause will be remanded to the Chancery Court for the execution of the decree, and the costs of this court will be paid by the complainants out of the proceeds of the sale of the attached property, and the costs of the Chancery Court as adjudged by the Chancellor.